**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2191-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ALLAN MATTOCKS, a/k/a
ALLAN D. MATTOCKS,
ALLEN MATTOCK, and
ALLEN MATTOCKS,

    Defendant-Appellant.

_____

Submitted June 3, 2025 – Decided September 2, 2025

Before Judges Firko and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 15-06-1698.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the briefs).

Grace C. MacAulay, Camden County Prosecutor, attorney for respondent (Rachel Lamb, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

This post-conviction relief (PCR) appeal returns to us following further consideration on remand. Defendant Allan Mattocks appeals from the February 7, 2024 order denying his PCR petition without an evidentiary hearing. He argued that his trial counsel failed to call an exculpatory witness at trial. Having reviewed the record in light of applicable law, we affirm.

I.

The procedural history and trial evidence are detailed in our unpublished decisions affirming defendant's convictions on direct appeal and remanded for resentencing. State v. Mattocks (Mattocks I), No. A-4341-15 (App. Div. Apr. 12, 2018), certif. denied, 236 N.J. 31 (2018); State v. Mattocks (Mattocks II), No. A-2244-20 (App. Div. May 24, 2022), certif. denied, 252 N.J. 236 (2022). Thus, we provide only a brief summary of the facts and prior procedural history relevant to this appeal.

On April 10, 2012, defendant violently assaulted and beat S.B.W.,[1] believing that she had stolen his trash cans. Defendant was later arrested and charged in connection with the assault.

---

[1] We use initials to protect the identity of the victim. R. 1:38-3(c)(12).

On the evening of April 12, 2013, defendant, assisted by Joshua Sloan and Jonathan Kearney, kidnapped S.B.W. in a van, then shot her in the head at an abandoned lot to silence her. She survived but remains severely and permanently disabled.

In 2016, a jury trial was held. At trial, Kearney's mother, Sharon Busan, testified on behalf of the State. She stated that she lived two houses away from the abandoned lot where defendant shot the victim. She recalled seeing defendant on the night of April 12, 2013, along with Kearney and Sloan sitting in defendant's van parked near her house. Later that night, she heard a loud noise sounding like a "firecracker." Busan also recounted that defendant later instructed her at a wedding to "keep her mouth shut," and that she "knew what he was talking about."

Elmis Mateo testified that he was walking his dog on the night of the shooting, he explained that he saw a " gray or silver van" parked on Rand Street near the abandoned lot. He heard a gunshot, saw the van drive away, and then walked to the back of the abandoned house where the shot had originated. Mateo approached S.B.W., who was lying on the ground with a head wound, called 9-1-1, and provided a statement to the police.

A-2191-23

Pursuant to a plea agreement Sloan agreed to testify at defendant's trial. Sloan testified that on April 12, 2023, defendant picked him up along with Kearney. After driving around "for a couple of hours," the van stopped, and defendant got out and "forced" S.B.W. into the vehicle.

In March 2016, defendant was found guilty of third-degree criminal restraint, N.J.S.A. 2C:13-2(a); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7); first-degree kidnapping, N.J.S.A. 2C:13-1(b)(2); first-degree attempted murder, N.J.S.A. 2C:5-1, 2 and N.J.S.A. 2C:11-3(a)(1); first-degree witness tampering, N.J.S.A. 2C:28-5(a); second-degree retaliation against a witness, N.J.S.A. 2C:25-5(b); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4); second-degree possession of a weapon (handgun) for an unlawful purpose, N.J.S.A. 2C:39-4(a); conspiracy to commit first-degree murder, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:11-3(a)(1); first-degree conspiracy to commit kidnapping, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:13-1(b)(1); and second-degree certain persons not to have a handgun, N.J.S.A. 2C:39-7(b). Defendant was ultimately sentenced to a seventy-year custodial term with forty-seven years of parole ineligibility.

A-2191-23

In February 2019, defendant filed his first PCR petition. Defendant asserted trial counsel was ineffective for failing to call Ramon Rivera, Sharon Busan's brother, as a witness at trial even though he was on the defense witness list and had been subpoenaed by counsel. Defendant contended that Rivera had informed him Busan had lied to the police about his involvement, and contended that Rivera's testimony should have been presented to impeach Busan's credibility.

In its February 25, 2021 decision, the PCR court denied the petition without an evidentiary hearing, finding defendant failed to establish a prima facie claim under Strickland v. Washington, 466 U.S. 668 (1984); State v. Fritz, 105 N.J. 42 (1987) (adopting the Strickland test in New Jersey). In regard to Rivera, the court found the decision not to call him was strategic, and defendant had provided no certification or other proof from Rivera.

On appeal, we affirmed the PCR court's denial on defendant's ineffective assistance of counsel claims that trial counsel failed to (1) diligently investigate his case; (2) effectively cross-examine Sharon Busan; and (3) provide accurate information for defendant to make an informed decision on whether to accept the State's plea offer. Mattocks II, slip op. at 14-20.

A-2191-23

On appeal, defendant produced, for the first time, a certification from Rivera dated December 12, 2019, disputing Busan's account of events. Rivera certified that:

> he, Busan, and other family members were drinking in the basement of their parents' apartment on April 12, 2013, and from that location in the home, there "was no way that [Busan] saw anyone parked in the front of the building between 9:30 p.m. and 10:00 p.m." He further denied that Busan could have heard the gunshot because he heard "a loud pop sound," and asked whether anyone had also heard it, to which Busan allegedly responded, "hear what?"
>
> [Id. at 20-21.]

Rivera further certified that defendant's trial counsel subpoenaed him and that he came to court prepared to testify, but during the lunch break was told by counsel that he "was no longer needed." Id. at 21. Thus, we remanded the matter to the PCR court to address the single, discrete issue related to trial counsel's decision not to call Rivera as a potential defense witness.

Following the limited remand hearing, the second PCR court again denied relief in a February 7, 2024 order. At the hearing, PCR counsel addressed the basis for Rivera's testimony. PCR counsel maintained that Rivera was a "critical witness" who could have "neutralized" Busan's testimony. He further argued

A-2191-23

that Rivera's testimony would have effectively "diluted" Busan's testimony, thereby creating reasonable doubt.

At the hearing, PCR counsel submitted a letter from defendant's trial counsel dated September 6, 2018, that stated:

> I must confess that at this time I do not remember why [Rivera] was not called, and I do not recall receiving a statement from him in regard to Sharon Busan lying. I have to look at the statement to refresh my recollection, so if you have it, please forward a copy.[2]

The court analyzed defendant's claim under the two-prong test articulated in Strickland, 466 U.S. at 685-87, and Fritz, 105 N.J. at 58. The court explained:

> The [c]ourt does not find that trial counsel's failure to call Ramon Rivera as a witness fell below the level of reasonable professional judgment. The facts alleged demonstrate a clear possibility that the testimony may have impeached the State's witnesses; however, due to the preparation done beforehand, counsel's readiness to call Rivera as a witness and the available factors which support the finding that the decision not to call Rivera was a knowing strategic decision, the [c]ourt does not find that the alleged facts demonstrate . . . substandard performance by trial counsel. To the contrary, . . . the level of preparation provides strong circumstantial evidence the decision was [a] knowing trial strategy.

---

[2] This letter is not in the record before us on appeal, and we rely on the recitation by the PCR court at the remand hearing.

7

The court determined defendant's trial counsel called "strong witnesses" for the defense. He noted "to call a weak witness to impeach what was effectively cumulative testimony could have weakened the appearance of . . . [d]efendant's otherwise strong defenses." In regard to Busan's testimony, the second PCR judge characterized it as "weak" in comparison to the State's "exceedingly strong" case overall.

The court concluded that even if trial counsel's decision not to call Rivera was in error, defendant failed to show a reasonable probability of a different outcome, as required under prong two of the Strickland/Fritz standard. Accordingly, the second PCR judge ruled that defendant was not entitled to an evidentiary hearing. This appeal followed.

II.

On appeal, defendant presents one argument:

POINT I

AS DEFENDANT HAD SHOWN BY THE PREPONDERANCE OF THE EVIDENCE THAT HIS ATTORNEY WAS INEFFECTIVE BY FAILING TO CALL RAMON RIVERA AS AN EXCULPATORY WITNESS AND THERE WERE MATERIAL FACTS IN DISPUTE, THE PCR COURT ERRED ONCE AGAIN WHEN IT DENIED THIS CLAIM WITHOUT AN EVIDENTIARY HEARING.

A-2191-23

The factual and legal determinations made by a PCR court are reviewed de novo when an evidentiary hearing is not held. State v. Harris, 181 N.J. 391, 420-21 (2004); State v. Lawrence, 463 N.J. Super. 518, 522 (App. Div. 2020). A PCR court's decision to proceed without an evidentiary hearing is reviewed for an abuse of discretion. State v. Vanness, 474 N.J. Super. 609, 623 (App. Div. 2023) (citing State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013)).

To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong Strickland/Fritz test: (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 52. Under prong one, a defendant must establish that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; Fritz, 105 N.J. at 52. Under prong two, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; Fritz, 105 N.J. at 52.

A defendant filing a PCR petition is not automatically entitled to an evidentiary hearing. State v. Porter, 216 N.J. 343, 355 (2013); State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). The PCR court should

9

grant an evidentiary hearing only when: "(1) the defendant establishes a prima facie case in support of PCR; (2) the court determines that there are disputed issues of material fact that cannot be resolved by review of the existing record; and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted." Vanness, 474 N.J. at 623 (citing Porter, 216 N.J. at 354).

When reviewing such claims, courts apply a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. "Given that presumption, 'complaints "merely of matters of trial strategy" will not serve to ground a constitutional claim of inadequacy[.]'" State v. Kearney, 479 N.J. Super. 539, 547 (App. Div. 2024) (quoting Fritz, 105 N.J. at 54). "To rebut that presumption, a defendant must establish that trial counsel's actions did not equate to sound trial strategy." Id. at 547-48 (quoting State v. Chew, 179 N.J. 186, 203 (2004)) (internal quotation marks omitted).

"[A] defense attorney's decision concerning which witnesses to call to the stand is 'an art,' and a court's review of such a decision should be 'highly deferential.'" State v. Arthur, 184 N.J. 307, 321 (2005) (quoting Strickland, 466 U.S. at 689). Moreover, when a defendant asserts that his trial counsel failed to call certain witnesses, we consider "whether there is a reasonable probability

10

that, but for the attorney's failure to call the witness, the result would have been different[;] that is, there would have been reasonable doubt about the defendant's guilt." State v. L.A., 433 N.J. Super. 1, 16 (App. Div. 2013).

At the outset, we first address the limited scope of our remand in Mattocks II. On remand, defendant sought to expand his ineffective assistance of counsel claim. Defendant advanced the claim that Rivera's testimony could have potentially impeached two other witnesses: Mateo—by casting doubt on details such as the van's color or its location—and Sloan—by challenging the credibility of his testimony given under a plea agreement. Both arguments exceeded the scope of the remand hearing.

Nevertheless, the second PCR court analyzed defendant's new arguments and found that even if his trial counsel's failure to call Rivera to be substandard performance, the totality of the State's case was "exceedingly strong." The court explained that Rivera's testimony would not have undermined the direct and "stronger testimony" offered by Mateo and Sloan. The court further explained that "nothing that would have been testified [to] by Sharon Busan would have contradicted any portion of Sloan's testimony, nor would the jury's disregard [of] her testimony [have] impacted any of the testimony from Mateo."

11

The court noted defendant's trial counsel called other "strong" witnesses for the defense. The court reasoned "to call a weak witness to impeach what was effectively cumulative testimony could have weakened the appearance of the [d]efendant's otherwise strong defenses." Notwithstanding, the court concluded that the evidence presented by defendant that directly contradicted the State's proofs, the jury rejected defendant's "strongest arguments and strongest testimony." Accordingly, the court concluded that defendant had not established a prima facie showing of ineffective assistance of counsel.

Having conducted a de novo review, we agree with the second PCR court that counsel's trial preparation and subsequent decision not to call Rivera as a witness did not fall below the objective standard of reasonableness. We, therefore, affirm the denial of defendant's PCR petition without an evidentiary hearing.

Having conducted a de novo review, we affirm substantially for the reasons explained by Judge Kurt Kramer in his thorough and well-reasoned opinion. Further, the record supports that even if Rivera had testified at defendant's trial, it was likely that defendant would still have been convicted based on the overwhelming evidence the State had presented at trial, including

12

two key witnesses that Rivera's testimony would not have impeached—Sloan and Mateo.

To the extent we have not discussed them expressly, all other arguments raised by defendant lack sufficient merit to warrant discussion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2191-23